*714 The opinion of the Court was delivered by
Todd, J.
These consolidated suits were instituted in the District Court of the Parish of Tensas, against the defendants, as universal legatees of John Perkins, Sr., deceased, to recover certain special legacies, devised in tire last will and testament of said deceased, to the plaintiffs in the two cases, respectively.
The clauses in saidlast will, relating to these legacies, are as follows :
“XIII. I do hereby give and bequeath to my relatives, Elizabeth Scott Eskridge and Mrs. Anna Buck, wife of Capt. J. H. Buck, the sum of $5,000 each, and also to Miss Mary E. Ogden and to Mrs. Eliza Ogden, and to Miss Julia Ogden, daughters of Judge A. N. Ogden, of New Orleans, I give and bequeath to each of them the sum of $5,000 ; these $5,000 each, to be paid when practicable.”
“XIV. I do hereby order, and it is my will, that the indebtedness of Miss Elizabeth Scott Eskridge and Benj. B. Eskridge, to Mrs. Murdock’and Mrs. Ellen M. Perkins, say the amount of $10,000 principal, together with the interest accrued thereon, be bequeathed out of the proceeds of the rental of the Somerset Estate, and if it cannot be immediately liquidated, by reason of funds not having accrued, then it is my desire and will that the mortgage or lien be transferred from the property of the said Eskridges, and be a charge on my Somerset Estate, to be paid in preference to others, as soon as practicable.”
“ XVIII. I ■ give, devise and bequeath to my grandchildren, the children of my deceased son, William Perkins, and his wife, Ellen M. Perkins, all that body of land situated partly in the Parish of Madison and partly in the Parish of .Tensas, known as the ‘ Somerset Estate,’ (except, the ‘Hapaka Place,’ hereinbefore bequeathed and devised to Mrs. Evelyn Perkins and Miss Evelyn Bailey), being the same lands estimated with the Hapaka Place at 17,500 acres, more or less, and before the change of the parish lines situated partly in both of said parishes, and which property I made over by act of donation, on the 17th day of April, 1857j to my son, John Perkins, Jr., and which reverted to me, and I have sued for the recovery of, on the ground of the non-fulfilment by him of the conditions of the donation — there being a large amount of arrearages due and unpaid of the annuities which were stipulated to be paid to me, as one of the conditions of said donation. And my said son, John Perkins, Jr., having received from me, in money and other property, and revenues derived from the Somerset Estate, more than the portion which, by the laws of Louisiana, he would have a right to claim as forced heir, I institute my said grandchildren my universal heirs and legatees of all my property, real and'personal, unappropriated by this will, subject to the legacies herein made, I confirm to my said grandchildren the donation to them of *715 Eighty Thousand dollars each, contained in the aforesaid act of donation, made by me to said John Perkins, Jr., and which has been accepted for them by their mother as their tutrix. But, as the property devised to them by this, my last will, will be more than sufficient in value, to meet their claims under said act of donation, and the payment of the special legacies herein provided for, and [as] I desire that the property itself should be kept by them as a better investment of their means than any other that could be made, I express to them my strong wish and desire that they should accept the provisions of this will in their favor and not seek to have the property sold at my death, but let their claims be merged in the property given to them by this will. And I desire that the property should be kept together by my executors for their benefit and for the payment of said legacies, and that no division should be made between my grandchildren as long as the law will permit; that it should be kept together and undivided for tire purposes aforesaid. And all the monied legacies specified in my will are to be paid out of funds and revenues accruing from the rents and revenues of the Louisiana property, at such times and periods as it can be done without requiring property to be sold, and after taxes past due and debts are paid, and without depriving my grandchildren of the funds they may require from the revenues for their necessary expenses and means of education. And all of said legacies are to be a charge on the Somerset Estate, and nothing charged on my residence, the Oaks, save and except doctors’ bills and funeral expenses; and charges imposed in the special devise of the Oaks.”
This last will is dated the 11th June, 1866, and the testator died in the latter part of November of the same year.
On the 7th of April, 1857, John Perkins, Sr., made a donation inter vivos, to his son, John Perkins, Jr., which embraced all the property mentioned and devised in his last will. In the act, the donor imposed on the donee certain charges, among which were an annuity of $15,000 in favor of himself, (the donor) and $240,000 to be paid on the death of the donor to the children of his son Wliliam Perkins, (then deceased), the defendants in these suits. This sum was stated in the act to be in satisfaction and discharge of their rights as forced heirs of one-fourth of the donor’s estate, and also of any claim under the will of their father, to a share in the community which had existed between the donor and his deceased wife.
On the 2d of December, 1865, this provision in favor of the defendants was accepted by their mother and tutrix.
In the same month, (December, 1865) John Perkins, Sr., brought suit against his son, John Perkins, Jr., to revoke the donation, on *716 account of the non-payment of tlie annuities, the latter being absent from the State, and represented in the suit by a curator ad hoc.
A judgment was rendered by the District Court a few days before the death of the donor, revoking the donation.
An appeal was taken from this judgment by the curator of the absent defendant, and his creditors, who had intervened in the suit, to the Supreme Court, and by this Court the judgment was reversed, and the cause remanded for a new trial. After the remanding of the cause, the executors of thelastwill of John Perkins, Sr., added by amendmentto the causes of revocation of the donation, the non-payment of the $240,000, to the children of William Perkins. Shortly after this action of the executors, on the 9th of August, 1869, John Perkins, Jr., by an act of dation cn paiement transferred to the defendants all of the Somerset Estate described in the last will mentioned, except the ‘ I-Iapaka Plantation,’ which had been devised by the will to the wife and stepdaughter of John Perkins, Jr.
Tho transfer was made in discharge of the sum of $240,000 imposed on the donee in the act of donation from John Perkins, Sr., to John Perkins, Jr., referred to. The transfer was accepted by pne of the defendants, then of age, and by the mother and tutrix of the other two.
Subsequently, after the claims of the creditors of John Perkins had been compromised and assumed by tho defendants in these suits, the children of William Perkins, a second and final judgment was rendered .by the District Court, revoking the donation from John Perkins, Sr., to John Perkins, Jr.
On the death of John Perkins, Sr., all the property mentioned, both in the act of donation inter vivos, and in his last will was inventoried as comprising his estate, and was taken possession of, and administered by Abner N. Ogden and Josiah Stansborough, executors of his last will. On the 24th of April, 1874, the whole of it, except the Hapaka Plantation, which had been previously delivered to the legatees, to whom it was devised by the will, was turned over to these defendants, who accented it through their agent, Judge E. D. Farrar, This delivery was preceded by an account of the executors.
The application for the rendition of this account was made by these defendants through an attorney; and in this application and all the proceedings relating to the account, and in the power of attorney given by the defendants authorizing their agent or attorney to demand the account and receive possession of the estate, the defendants were styled the heirs and universal legatees of John Perkins, Sr., deceased.
The present suits were instituted, one in 1876, and the other in 1877, against the defendants as the heirs and universal legatees of said *717 deceased, to enforce the payment of the legacies stipulated in the will in favor of the plaintiffs, respectively.
The main defenses to the suit, embraced in the original answer filed, were :
1. That the legacies exceeded the disposable portion.
2. That they were payable out of certain revenues which had never existed, and were, therefore, not binding on the defendants,
3. That the defendants held the Somerset Estate, not under the will of John Perkins. Sr., but under the sale or giving in payment from John Perkins, Jr., of the 9th December, 1869.
On the 27th of November, 1877, judgment was rendered by the District Court in favor of the plaintiffs for the amount of the legacies claimed, but directing and restricting their payment out of the revenues of the Somerset Estate. From this judgment the plaintiffs appealed, and the decision rendered on this appeal will be found reported in 30 A. p. 718.
In the opinion delivered by Mr. Justice DeBlanc, the organ of the Court, all the issues and facts to which we have referred are set forth, and sueh previous recital might seem to render unnecessary any repetition of them by ourselves, but that we deem it important to the full understanding of our decision that a history of the case should' be again presented, especially in view of the additional issues and facts developed on the last trial of the case in the District Court, and which will be fully stated hereafter.
Our predecessors, without rendering any decree save the remanding of the case, expressed in the body of their opinion their views on the several points of the controversy, as follows :
1. That the executors of the estate of John Perkins, Sr., had authority to prosecute the-suit for the revocation of the donation after the death of the donor. A proposition asserted on the former trial and on the appeal by the plaintiffs, and denied by the defendants.
2. That the elation en peuement of the Somerset Estate by John Perkins, Jr., to the defendants, in December, 1869, did not invest them with a valid title to the property, in view of the judicial revocation of the donation subsequently made.
3. That the defendants received a title to the Somerset Estate under the last will of John Perkins, Sr.
4. That under their judicial admissions and promises, the defendants bound themselves for the payment of the legacies.
5. That the plaintiffs were not limited to the revenues of the Somerset Estate for the payment of their legacies, but that the defendants were personally bound for them, subject to their right of abandoning *718 the property after the payment of the debts, and the reserve of their legitime.
In the course of the opinion, the Court used the following language :
“It is not alleged that their acceptance was the consequence of any error of fact, of any fraud practiced, or violence exercised against them, and they cannot now dispute its validity. They have, in judicial proceedings, and in an authentic act, assumed the quality of heirs and universal legatees, etc.”
And again, in speaking of the act under which the defendants acknowledged delivery of the property by the executors, the following language is used:
“ And as against that act, its recitals and stipulations, they plead neither error nor fraud, etc.”
In conclusion, it was stated that sufficient evidence was not before the Court to determine the plea of prescription filed by plaintiffs to the demand for the reduction of the legacies, nor to fix the reduction, should any be allowed, and the cause was remanded for a new trial: but the Court expressly announced that the scoi>eof that trial was not limited.
Upon the case being remanded, an amended answer was allowed to be filed, though opposed, as changing the issues presented by the original answer.
The amended answer is a long one, but its material averments are, in substance, that the defendants never accepted, or intended to accept, the succession of John Perkins, Sr., as universal legatees; that the alleged acts of acceptance set up against them were founded in error, and a misconception of their legal rights; that they were led into this error by the advice and representations of one of the executors, who was their legal adviser, and also the adviser of their mother and tutrix; that this executor had an adverse interest to theirs, which rvas specifically sot forth; that they were absent from the country during the entire proceedings, and were minors during most of the time the same ■were being conducted; that by the advice given them, and representations made, they wore deceived and defrauded, etc.
With these now issues added, the ease was again tried. Under the ruling of the Judge a quo, this last trial embraced all the issues, original and supplemental, raised by the pleadings in the case.
In view of the fact that our predecessors, on the trial of the first appeal, rendered no decree upon any single issue in the case, and remanded the case for another trial, accompanied by the declaration that they did not limit the scope of inquiry, evidently made with reference to such future trial, and as directory thereof, we are not prepared to *719 say that the Judge a quo was in error in holding that the ease was open for trial on all the issues, original and supplemental.
These conditions of the case remove it from the scope of the authority of the case of Boisse vs. Dickson, 32 A. 1150.
In fact, it was not claimed by plaintiffs’ counsel, in their argument before this Court, that the dicta of Court on the former appeal constituted res adjudieata.
On the 16th of April, 1880, after a second trial, judgment was rendered in every respect similar to the previous one. From this judgment the plaintiffs have appealed, and defendants have asked an amendment rejecting the entire demand.
We.have carefully examined the voluminous record, swelled as it is by the additional pleadings and evidence of the last trial, and which we consider properly allowed and admitted, and with the thorough knowledge afforded by this examination, have closely reviewed the opinion of- our predecessors in the former appeal, and reviewed the several questions of law and fact therein discussed, and with one exception, to be hereafter mentioned, concur in the views and conclusions they announced. We refer to that decision and to their reasoning on the propositions involved; and with this reference, and without repeating them, or seeking to elaborate them more fully, announce our approval of the same, and our concurrence therewith.
' • We have also closely canvassed the evidence and the law bearing on thenew issues presented by this amended answer, filed after the remanding of the case, but find nothing therein to influence our decision, or alter our conclusions, with respect to the vital issues involved.
The evidence does not, in our opinion, establish the charges of fraud and error alleged.
The defendants may have committed a grievous mistake in not accepting the gift of money made in the donation inter vivos, and confirmed by the will of the donor. This mistake may have appeared plainer by the light of subsequent events.
The donation inter vivos could nothave been revoked to the prejudice of the defendants. In fact, it wab not revoked as to them by the donor, but, on the contrary, confirmed by his will. They had only to claim the money given, and renounce other rights and benefits proffered by the will, to be entitled to receive the money, and with it acquire all the rights and immunities of special legatees.
There is evidence that they were advised to this course, and that the representative of the defendants, then minors, declared to the executors that such was her choice, but there is no evidence that any such claim was preferred, or any such character assumed, in any single act or proceeding, judicial or extrajudicial, contained in the record. On the *720 contrary, in the very instruments under which they set up title to the property outside of the will, and upon which they solely rely as showing such title, (we refer to the act of giving in payment, executed by John Perkins, Jr.) so far from showing an exclusive claim under that act, to the specific gift or legacy, and a renunciation as heirs or universal legatees, there is an express declaration in the act that nothing therein “ is intended or is to be construed as a waiver, or as in any manner impairing the rights of any of the parties as universal or special legatees in the will of the late John Perkins, Sr., all of which rights are reserved.”
On the 25th of March, 1874, all of the defendants joined in a notarial act of procuration to Judge E. D. Farrar, two of them at that time having attained their majority, and the other emancipated, under and by authority of which act, all the proceedings were conducted, touching the account rendered by the executors, and the delivery of the estate* to their agent, Judge Farrar, of which they now complain as misrepresenting them, and putting them in a false light.
In this power of attorney they assumed distinctly the capacities of universal and special legatees under the will, and acknowledged a liability for the legacies, and authorized their agent to settle or compromise with the legatees. This may have been an unfortunate instrument for them, but it was their own act, and in legal contemplation every expression therein was thus made by them for the purposes declared.
It is possible that they did Hot know or understand the contents of that act, and very probable that the agent and attorney who instituted the proceedings and carried out the act, was never directed in those* proceedings by the defendants or those authorized to speak for them, and they may even have been ignorant of the fact that they were being conducted in their name, but the proceedings are, nevertheless, binding upon them.
They were bound to know and appreciate the legal effect of their own personal act. At the time they gave the procuration to Judge* Farrar and made the declarations referred to in the act .conferring it, the defendants were under no incapacity, and there is no ground or cause to excuse or exempt them from the legal effect and consequences following the execution of the mandate they had conferred. All that their agent did, he was directed to do by the terms of the mandate. They may have been induced to execute this power of attorney by bad advice, and the act may have been prepared and its terms dictated by such advice, but to construe this as a fraud practiced upon them by the executor, if he did so advise, would be to justify a similar charge* against the testator himself, who, though the property comprising his *721 estate,-when he penned his will, was in the same condition as when delivered to the defendants, not only advised, but urged them to take the property, burdened as it was by the legacies, in preference to the sum of money given them in the act of donation, and confirmed by the will. Such advice from the executor, as from the testator, might have proceeded from an honest error of judgment.
“ The heir who is of age cannot dispute the validity of his acceptance, whether it be express or tacit, unless such acceptance has been the consequence of fraud practiced or violence exercised against him.” C. C. 1009.
Such is the law, and the evidence does not enable us to declare their acceptance invalid for either of the causes therein expressed.
We do not, however, attach all the consequences to this acceptance, which our predecessors seem to have attributed to it, and this difference forms the exception, we mentioned above, to our concurrence in the conclusions reached by them on the previous appeal.
Our view of the law and the facts bearing on the point, forced us to the same conclusion arrived at by the two District Judges who have rendered judgment in the case, however obnoxious to criticism that conclusion may seem in the estimation of the plaintiffs’ learned counsel.
The effect of an acceptance of an intestate succession by the heir, binds him to pay all the charges against the succession, even out of his own property. C. C. 1013.
The engagement of the heir in a testamentary succession, who has accepted unconditionally, with respect to the legacies, is different. Ib.
Universal legatees are not always bound for the payment of special legacies beyond the value of the succession, and if they be forced heirs, can discharge their liability to special legatees, by abandoning to them what may be left of their property, after paying the debts and retaining their legitime. C. C. 1465, 1466.
In this case, had the testator made the special legacies in question, to the plaintiffs, without terms or conditions as to their payment, and the defendants been instituted his universal legatees for the residue of his estate, and accepted, they would have come under the provisions of the law just referred to. Such, however, are not the facts.
The defendants, like the plaintiffs, were special or particular legatees under the will. They had a right under it to receive $240,000, as a confirmation of a remunerative donation, to satisfy their claims as forced heirs, and the claim inherited from their father in the community interest of his mother. This imposed a charge upon the estate, which could have been enforced against its entire property, to the exclusion of the plaintiffs’ legacies.
In lieu of this sum of money, they had the option to take, as particular *722 legatees, the Somerset Estate, (less the Hapaka Plantation, devised.' to others) charged with the payment, out of its revenues, of the legacies in favor of the plaintiffs, and this property, thus burdened, they chose and did receive. In receiving it, they must be considered as doing so under the explicit terms of the will, as particular legatees of this property. The universal legacy, if we may so call it, did not comprise this property, but, as expressly declared in the will, only extended to, or embraced, such-as was not otherwise appropriated thereby, that is, such as the particular legacies had not exhausted. The defendants, by their acceptance, did not deprive themselves of their rights under the special legacy to them of the Somerset Estate. They accepted the will. Nothing more, nothing less.
The will, and the terms therein prescribed, constitute the title under which defendants hold Somerset, and those terms are just as imperative and binding on the plaintiffs as upon the defendants, touching their respective rights.
The defendants are not the debtors of the plaintiffs, except in so far as they are the owners of an estate whose revenues are devoted, under certain conditions, to the payment of their moneyed claims. The restrictions touching their payment are a material requirement of the will, which could not bo dispensed with or relaxed without doing violence to the declarod wishes of the testator, and granting, rights to these special legatees that would be destructive to the main and manifest purposes of the will. They demand a judgment that would entitle them to sell out the estate, and out of the proceeds, pay their legacies immediately. The will declared that they were to be paid when practicable, and further explains what is meant by the qualification or condition thus used, by prescribing, in the language of the testator, that all the moneyed legacies specified in my will are to be paid out of funds accruing from the rents and revenues of the Louisiana property, at such times and periods as it can be done, without requiring property lo be sold.
And again : “ I desire that the property stiould be kept together by my executors for the payment of said legacies, and that no division should be made between my grandchildren as long as the law will permit it should be kept together and undivided, for the purposes aforesaid.”
In the face of this plain language, manifesting an earnest desire paramount to every other consideration, that his vast estate should remain undivided and intact, in the possession of his descendants for generations, if possible, we know that the testator could not have conceived the thought of giving to these legatees the power, under any circumstances, to sell out, and, if necessary, sacrifice his lands, to pay their *723 legacies. Not can we regard the terms and conditions of the will respecting the payment of the legacies, and the manner of their payment, as mere directions, intended for the executors, and tobe observed only during the period of their administration. The language of the will forbids such a conclusion, and shows that the thoughts and wishes of the testator were more far-seeing and far-reaching, and were contemplating results far beyond the limits of an executor’s tenure and administration, and were evidently specially directed to his most favored legatees, and designed for their guidance, and at the same time to measure the rights of those in whose favor he had established a charge against those who were to possess his estate.
The will of the testator must and should be the law to the parties and to the Court.
One of the most distinguished of civilians and law writers has likened a last will and testament and the engagements of a legatee or testamentary heir under it to a contract between the testator and such legatee or heir.
Thus it is said : “ The engagement in the quality of heir ought to have the. same effect as if the heir had treated with the deceased to whom he succeeds, and it is the same thing in effect as if it had been agreed between them, that if the heir would accept that quality, he should have all the. goods of the succession, and should likewise be bound to acquit all the charges.”
This kind of a treaty between the deceased and his heir, is made on the part of the deceased in his testament, and on the heir’s part in the moment he accepts the succession. Eor the testator explains in his testament his intention to leave his goods to his heir on condition he shall satisfy all the charges. Domat, Folio Ed. p. 383, verbo Title iii, Sec. 1.
The act that makes him heir is, as it were, a contract between him and the persons to whom this quality may oblige him, by which he takes the goods on condition to acquit the charges. Ib.
And again : “ The conditional dispositions of testators and others which may oblige the legatee to have security or precaution, are executed according as the intention of the testator and the circumstances may seem to demand. And provision is made in this matter different ways, either according to what the testator himself has ordained, if he has explained himself about it, or in the mafaner which may best suit with the interest, of the persons who may be concerned in the said bequests.” Ib.; 7 A. 416; 13 A. 122.
The proposition that the acceptance of an estate or a legacy, burdened with charges in favor of other persons, abrogates all the terms and conditions stipulated and imposed, by the testator, and makes *724 tlio charges immediately exigible against the legatee who assumes the charges, by taking possession of the estate thus burthened, or otherwise, might have great force if, upon discharge of the executor, and the entering on the estate of the legatee, the beneficiaries of the charges imposed were left without security for their claims. But such is not the case. The law imposes a mortgage on the estate or immovables entered upon by the testamentary heir or legatee, as security for the payment of the special legacies which can be enforced according to the conditions and terms of the charge imposed to which it is accessory. C. C. 1633.
The will of the testator being the law to the Court as well as to the parties, it is the province and duty of the Court to endeavor to ascertain its true intent and meaning, the wishes, intentions and purposes of the testator, and to provide, as far as lies in its power, under the law, that these wishes be faithfully carried out, and that the objects of his beneficence may receive, and in the manner he may have designated, and according to the terms he has prescribed, all that his bounty intended to bestow upon them.
No one can read the evidence in this record, in fact, he need read only the will itself, to be satisfied that the defendants — his fatherless grandchildren — girls of tender age — were the special objects of the solicitude and affection of the testator. Por their maintenance and well-being it was his chief aim to provide, and notwithstanding the ruin and desolation caused by the calamities of war, that had swept over his beautiful home, and surrounded him on every side, when he penned this last depository of his wishes, he did make ample provision for these objects of his love, for their comfort and happiness. And whilst we are deprived of the power, by their own unfortunate acts, to restore to them the facility of making that provision as ample and effective as their generous benefactor designed it to be, we can, at least, by a just and reasonable construction of the law and the evidence bearing on the issues in the case, and in entire consonance with the authorities on the subject, give such effect to the dispositions of the testator, as not to defeat his manifest purpose, and strip the main objects of 1ns bounty of all they have thus far received, and perhaps reduce them to poverty, for the benefit of those to whom he was comparatively indifferent, and to some of whom he was a stranger.
The judgmentof the lower court directed the payment of the amounts of the legacies be made out of the revenues of the Somerset Estate, commencing from the date of the decree. In this it is erroneous. These amounts are entitled to be acquitted out of the net revenues from the time that the defendants took possession and commenced the administration of that estate, and the plaintiffs have a right to require *725 that a full and correct account of such administration be rendered them.
It is, therefore, ordered, adjudged and decreed, that the judgment appealed from be amended by striking from the concluding portion ■thereof, the words, “ this decree,” which are the 66th and 67th words therein, and substituting therefor the words: “the actual taking
possession of said estate by the defendantsand that thus amended, the said judgment be affirmed at the cost of the appellees.